# United States Court of Federal Claims

No. 17-1006 C
Filed Under Seal: December 21, 2017
Reissued: January 9, 2018[1]

|  |  |  |
|---|---|---|
| GEO-MED, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Pre-Award Bid Protest; RCFC 52.1; |
| v. | ) | Judgment on the Administrative Record; |
| | ) | Standing; Bundling |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*Eric S. Crusius*, Holland & Knight, Tysons, VA, for plaintiff.

*John S. Groat*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

***SMITH*, Senior Judge**

This pre-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record and the government's Motion to Dismiss.  Plaintiff, Geo-Med, LLC, alleges that the U.S. Department of Veterans Affairs ("VA" or "Agency") violated numerous regulatory requirements in drafting Solicitation No. VA240C-16-R-0007 ("Solicitation"), which seeks the procurement of Custom Sterile Procedure Packs for Veterans Integrated Service Networks ("VISNs").  Geo-Med claims that the Solicitation improperly and unnecessarily bundles a number of requirements that were previously procured separately.  The Court held Oral Argument on this matter on December 11, 2017.  The VA agreed to postpone the contract award until January 8, 2018, pending the Court's ruling.

For the following reasons, plaintiff's Motion for Judgment on the Administrative Record is denied, defendant's Motion to Dismiss is denied, and defendant's Cross-Motion for Judgment on the Administrative Record is granted.

---

[1]     An unredacted version of this opinion was issued under seal on December 21, 2017. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

## I.      Background

Plaintiff, Geo-Med, LLC, is a service disabled veteran-owned small business ("SDVOSB") that provides medical supplies to commercial and government customers. Complaint (hereinafter "Compl.") at 2.  Geo-Med currently provides Custom Sterile Procedure Packs to 34 VA facilities.  *Id.* at 3.  "Custom Sterile Procedure Packs are a collection of consumables assembled in a single sterile pack to perform a specific surgical or intervention procedure. . .The individual consumables can range from single use drapes and gowns, to diathermy, suction tubing, packs and gauze."  Administrative Record (hereinafter "AR") at 49.

On March 15, 2016, the VA issued a Sources Sought Notice ("Presolicitation") seeking the availability and technical capability of potential contractors to provide individualized custom sterile procedure packs to be utilized by approximately 127 different medical centers.  AR 1-2. "The custom sterile procedure pack program will include but not limited [*sic*] to; [*sic*] pack manufacturing, pack sterilization, quality assurance, and packaging, web based ordering/tracking systems, reporting, and pack delivery."  *Id.*  On March 28, 2016, Geo-Med ***.  AR 24-31.

On April 29, 2016, the VA Service Area Office ("SAO") – Central Region issued Solicitation No. VA240C-16-R-0007 seeking Custom Sterile Procedure Packs for VISNs 1-8, 17, and 19-22.  AR 541.  Geo-Med challenged the Solicitation at the Government Accountability Office ("GAO") on May 9, 2016, alleging that the Solicitation was improper because it violated the Small Business Act by improperly bundling the contract; because it was contrary to Executive Order 13170 and an internal VA memorandum issued on June 10, 2003; and because the VA failed to issue required notifications under 13 C.F.R. §§ 125.2(d)(5)-(6).  Compl. at 8-9.

On May 31, 2016, Geo-Med ***.  AR 7508-09.  On June 24, 2016, in response to another company's GAO protest, the Agency took corrective action and re-issued the Solicitation.  *Id*. at 8023-25.  GAO dismissed Geo-Med's protest on August 4, 2016, stating that the corrective action rendered the protest "academic" because the terms of the Solicitation were not yet finalized.  *Id*.

In an August 10, 2016 letter, the Contracting Officer ("CO") informed Geo-Med that the Solicitation had been amended, but the Agency was continuing with its "unrestricted approach," and "remain[s] firm in [its] decision not to seek a non-manufacture rule waiver."  *Id*. at 8411. The letter also stated that the agency provided the Solicitation amendments "to offerors remaining in the competitive range only," and, thus, would not be providing an amendment to Geo-Med, given that ***.  *Id*.; 48 C.F.R. § 15.206(c) ("Amendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition.").

Geo-Med then filed an amended protest at GAO on August 16, 2016, alleging that the corrective action did not resolve the issues raised in Geo-Med's May 9, 2016 protest, and the procurement was still "unlawfully bundled."  AR 8413.  GAO dismissed Geo-Med's amended protest on November 9, 2016, on the basis that Geo-Med *** and, as a result, is not qualified to argue that the Solicitation is improperly bundled.  *Id*. at 8743.  In accordance with GAO

precedent, "GAO will not consider bundling allegations where small business protesters ***." *Id.*

The VA continued to amend the Solicitation, and final offers were ultimately due July 28, 2017. *Id.* at 13451. On July 26, 2017, Geo-Med filed a complaint in this Court, alleging that the Solicitation unnecessarily bundles requirements, and the bundling precludes small businesses from participating in the procurement. Compl. at 10-11.

In its Motion for Judgment on the Administrative Record, Geo-Med alleges that the requirements of Solicitation were significantly different from those of the Presolicitation, specifically citing changes such as ***. Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "P's MJAR") at 9. These specialized requirements, according to Geo-Med, "make the Solicitation unsuitable for award to a small business. . ." and, thus, ***. *Id.* Geo-Med further alleges there is no indication that sufficient market research was done to determine whether bundling was necessary and justified. *Id.* at 17.

The government asserts that Geo-Med is not a prospective bidder for standing purposes, because Geo-Med *** and filed its Complaint 250 days after GAO's November 18, 2016 denial of its protest. Defendant's Motion to Dismiss, or, in the alternative, for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "D's MTD") at 14. Alternatively, the government argues that Geo-Med has failed to demonstrate that the VA's Solicitation constitutes improper bundling under 15 U.S.C. § 631(j)(3), and, thus, its actions were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 14-18.

Plaintiff's Motion for Judgment on the Administrative Record was filed on September 22, 2017. Defendant's Motion to Dismiss, or in the alternative, Cross-Motion for Judgment on the Administrative Record was filed on October 24, 2017. Oral Argument was held in this case on December 11, 2017. Both motions are fully briefed and ripe for review.

## II.    Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for an agency action. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir.

2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  An agency procurement action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  *Advanced Data Concepts v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000).  Agencies, and contracting officers in particular, are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process."  *Savantage Fin. Servs v. United States*, 595 F.3d 1282, 1286 (quoting *Impresa*, 238 F.3d at 1332).

## A.  Rule 12(b)(1) – Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The government moves to dismiss plaintiff's bid protest for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), asserting that Geo-Med lacks standing to protest the Solicitation.  When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  However, the plaintiff bears the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires the bid protest to be brought by an "interested party."  A protestor is an "interested party" if it is an "(1) actual or prospective bidder and (2) possess[es] the requisite direct economic interest."  *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).  In a pre-award protest, a protestor has a direct economic interest in a procurement if it can assert a "non-trivial competitive injury which can be redressed by judicial relief."  *Weeks Marine, Inc.*, 575 F.3d at 1361-62.  The nature of the protest will dictate the necessary factors for a "direct economic interest."  *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

## B.  Rule 52.1(c) – Motion for Judgment on the Administrative Record

A motion for judgment on the Administrative Record pursuant to RCFC 52.1 assesses whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review.  *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013)  (citing  *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006); *Greene v. United States*, 65 Fed. Cl. 375, 382 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005)).  Under Rule 52.1 of the RCFC, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record.  *See Bannum*, 404 F.3d at 1354.  Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  *Id.* at 1355.

When a protestor claims that the agency's decision violates a statute, regulation, or procedure, the protestor must show that the violation was "clear and prejudicial."  *Impresa,* 238

F.3d at 1333 (internal quotation marks omitted).  The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'"  *EP Prods., Inc. v. United States,* 63 Fed.Cl. 220, 223 (2005) (quoting *CACI, Inc.—Fed. v. United States,* 719 F.2d 1567, 1581 (Fed. Cir. 1983)).  "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed. Cir. 1989).  The Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions.  *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.,* 419 U.S. 281, 285–86 (1974).

III.    **Discussion**

A.    **Standing**

As previously noted, to fall within this Court's bid protest jurisdiction, a protester must establish that it "(1) is an actual or prospective bidder and (2) possesses the requisite direct economic interest."  *Weeks Marine, Inc.*, 575 F.3d at 1359.  As Geo-Med is not an actual bidder, Geo-Med must establish itself as a prospective bidder.  "[I]n order to be eligible to protest, one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation."  *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989) (emphasis in original).  In *CGI Fed., Inc. v. United States*, the Federal Circuit held that a protestor who "diligently and continuously pursued its rights in the GAO and then, immediately upon dismissal by the GAO, in the Court of Federal Claims," retained prospective bidder status. 779 F.3d 1346, 1349 (Fed. Cir. 2015).  In *Rex Serv. Corp. v. United States*, the Federal Circuit held that a protester who did not submit a bid, and who submitted a protest in this Court three months after its GAO protest denial, lost its status as a prospective bidder.  448 F.3d 1305, 1308 (Fed. Cir. 2006).

There is no specific timeframe in which a protestor must "diligently and continuously pursue its rights" to retain its status, however, "[a] longer delay than necessary may be a factor in the [Court] declining to exercise jurisdiction."  *Palantir Technologies Inc. v. United States*, 128 Fed. Cl. 21, 33 (2016).  Geo-Med *** on May 31, 2016, and the Agency stated that Geo-Med was ***.  AR 7508-09, 8411.  The question then becomes whether Geo-Med exercised reasonable diligence in pursuing its protest.

The government argues that Geo-Med's 250-day delay in filing this action after its protest dismissal at GAO "deprives Geo-Med of any possible status as a disappointed bidder and standing to bring this protest."  D's MTD at 14.  Here, the protestor differs from those in both *CGI Fed., Inc.* and *Rex Serv. Corp.,* as Geo-Med filed its protest before the Solicitation period ended.  Judicial precedent makes it clear that a protestor's "opportunity to qualify as a prospective bidder ends when the solicitation period ends. . . ." *CGI Fed., Inc.*, 779 F.3d at 1350 (quoting *MCI*, 878 F.2d at 365).

The delay between the GAO protest dismissal and Geo-Med's Complaint might seem excessive, but Geo-Med avers that "[t]here is little doubt that the Agency would have alleged Geo-Med's protest was premature if it was filed prior to any of the numerous substantive

amendments that occurred in the months preceding the protest." Plaintiff's Response to Defendant's Motion to Dismiss and Reply to Defendant's Opposition (hereinafter "P's Resp.") at 4. Given the fact that Geo-Med's first GAO protest was dismissed because "the terms of the Solicitation were not yet finalized," it is reasonable to assume that as the Agency kept issuing amendments, the procurement process was ongoing. AR 7508-09.

 Geo-Med protested the Solicitation twice at the GAO and filed its Complaint in this Court prior to the close of the Solicitation period. Geo-Med is challenging the validity of the Solicitation, not the award. Geo-Med still *** prior to the Solicitation's closing date, and, absent the alleged defects in the Solicitation, Geo-Med likely would have ***. *See MCI Telecomms. Corp.*, 878 F.2d at 365. Those alleged defects in the Solicitation caused Geo-Med to ***. *CGI, Fed. Inc.*, 779 F.3d at 1351. ***, Geo-Med continued to pursue its rights in filing multiple GAO protests, as well as the protest at bar, prior to the close of the Solicitation. *See id.* at 1350. As the Solicitation had not yet closed at the time of this protest's conception, and as no award has yet been made, this challenge is still timely. *See, e.g., Palantir,* 128 Fed. Cl. at 32. Geo-Med exercised reasonable diligence in pursuing its protest, and, as such, this Court must conclude that Geo-Med was a prospective bidder at the time this protest was filed.

In addition to establishing that it is a prospective bidder, Geo-Med must also demonstrate that it has a direct economic interest that would be affected by the award of the contract. *Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012). In the pre-award context, this direct economic interest is demonstrated by a "non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine, Inc.*, 575 F.3d at 1361-62.

Geo-Med currently provides Custom Sterile Procedure Packs to 34 VA facilities, including many medical centers that are covered by the Solicitation. Compl. at 3; P's Resp. at 3-4. In this case, Geo-Med's non-trivial competitive injury is the deprivation of the ability to compete for the contract, which will likely deprive Geo-Med of the business in which it is currently engaged with a number of those VA facilities. Geo-Med's current business as a VA contractor and supplier of these Custom Sterile Procedure Packs is clearly impacted by the outcome of this Solicitation, and the alleged "errors in the Solicitation" preventing its participation could be remedied by judicial relief. P's Resp. at 4. Thus, Geo-Med satisfies the requirement for direct economic interest. As a result, Geo-Med meets the requirements for an "interested party" under 28 U.S.C. § 1491(b)(1) and has standing to bring this protest.

## B. Bundling

This Court will defer to an agency's expertise in making procurement decisions unless the agency has "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [issued a decision that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Improper bundling is defined as a solicitation that "(1) consolidate[s] two or more requirements that were previously procured under separate smaller contracts into a single contract, and (2) [is] likely [to] be unsuitable for award to a small business." *Benchmade Knife Co. v. United States,* 79 Fed. Cl. 731, 739 (2007) (citing 15 U.S.C. § 632(o)(2) and FAR 2.101). "[T]o the maximum extent practicable" agencies shall "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors."  15 U.S.C. § 631(j)(3).  In *Tyler Constr. Grp. v. United States*, the Federal Circuit held that "[t]he statute does not prohibit all bundling of contract requirements, but only 'unnecessary and unjustified bundling.'"  570 F.3d 1329, 1335 (Fed. Cir. 2009).  The Court in *Tyler Constr. Grp.* further found that the Agency had not violated anti-bundling provisions because the Agency "conducted extensive market research before determining that consolidation of the procurement requirements was 'necessary and justified.'"  *Id*.

Following *Tyler*, in *Geo-Med, LLC v. United States* ("*Geo-Med I*"), this Court held that a different VA solicitation for Custom Sterile Procedure Packs did not constitute improper bundling.  126 Fed. Cl. 440, 449 (2016).  In *Geo-Med I*, the CO identified a number of small businesses that could meet the Solicitation's requirements.  *Id* at 448-49.  However, because the CO conducted market research and "carefully documented her reasoning behind seeking a procurement to cover the entire SAO–Central region," the consolidation of procurement requirements was necessary and justified.  *Id*.

In the case at bar, the CO filed an extensive "Market Research Report," including an analysis of *Geo-Med I* and its impact on this procurement.  AR 70, 81.  At the end of the Market Research Report, the CO states:

> Due to the following[:] geographic area[;] contract dollar amount; number of packs required and history of prior procurements for these products; the quality standards; the compliance with TAA [Trade Agreements Act] for an estimated 4,000 individual components and an estimated 138 custom sterile procedure pack configurations; and as indicated in the above mentioned analysis of the small business and/or SDVOSB/VOSB businesses, I have determined small businesses and/or SDVOSB and VOSB businesses lack the necessary capabilities.

*Id.* at 83.  Given the detail and reasoning included in the Market Research Report, the Court must defer to the CO's expertise and sustain the procurement bundling as necessary and justified. Even if the Court disagreed with the CO's analysis of the market research, there is still a rational basis for its conclusion.  This is not a case in which the VA "failed to consider an important aspect of the problem" or "issued a decision that is so implausible. . . ."  *Ala. Aircraft Indus.*, 586 at 1375.  In fact, as evidenced by the Market Research Report, the VA was conscious of the bundling issue and gave due consideration to the potentiality that it might prejudice small businesses.  As such, Geo-Med has failed to demonstrate that the CO's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  The Administrative Record supports the Agency's decision to bundle the Solicitation requirements.

**IV.      Conclusion**

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**.  Defendant's MOTION to Dismiss is **DENIED**.  Defendant's CROSS-MOTION for Judgment on the Administrative Record is **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2]      This opinion shall be unsealed, as issued, after January 4, 2018, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.